UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00590-MOC-DSC

| | |
|---|---|
| **GILDAN USA INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **DILLARD'S, INC.,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Preliminary Injunction. Finding that plaintiff has not shown a likelihood of success, irreparable harm, that the balance of the hardships favors granting relief, or that the public interest supports injunctive relief, the court will deny the Motion for Preliminary Injunction.

**FINDINGS AND CONCLUSIONS**

### I.   Background

Defendant operates a chain of department stores and sells, among other items, apparel manufactured by plaintiff, including men's GOLDTOE brand athletic socks. In addition to selling plaintiff's socks, defendant also sells men's athletic socks under its own GOLD LABEL brand. It is undisputed that both plaintiff and defendant sell a number of items under their respective marks in addition to men's athletic socks.

In seeking a preliminary injunction, plaintiff contends that the packaging used by defendant infringes its trade dress rights under the *Lanham Act* and, for purposes of the instant motion for injunctive relief, claims trade dress protection for the following packaging elements:

-1-

(1) a colored band with contrasting white or gold lettering for its wordmark having two components, the first of which is the term "GOLD"; (2) a rectangle of contrasting color in the upper-right portion of the front of the packaging; and (3) side panels which incorporate the color gold. Defendant contends that its accused packaging does not infringe plaintiff's trade dress as it is composed of design and graphical features that are conventional and commonly used in sock packages and labels.

At the hearing, plaintiff presented a display of its full line of GOLDTOE socks. The court noted that while all the packaging included the word GOLDTOE, the colors and graphical elements used varied across the entire product line, with some wrappers having little similarity to the GOLDTOE packaging used in men's athletic socks. In most samples, the most prominent feature was the "gold toe" of the socks, which typically protruded from the top of the package.

Plaintiff also presented exhibits demonstrating the genesis of defendant's packaging from a point in time when plaintiff considered that it did not infringe to the current version of the GOLD LABEL men's athletic sock packaging, which plaintiff contends does offend protections afforded under the Lanham Act. Based on such exhibits, plaintiff argued that defendant's management intentionally steered its graphic artist toward a design which essentially copied plaintiff's packaging.

Defendant also presented a display of its socks as well as other manufacturer's socks in a PowerPoint presentation. Defendant demonstrated that despite serving a request for production, plaintiff failed to provide it with all iterations of its men's athletic sock packaging. Defendant's presentation was compelling as it demonstrated that plaintiff had not consistently used the elements for which it claims trade dress protection; equally, it was troubling to the court that

plaintiff failed to produce those packages, which were unfavorable, when requested to do so. Further, defendant demonstrated that other sock purveyors used various shades of blue in their men's athletic sock packaging, arguing that the use of labels with blue fields was simply what was popular in current packaging of men's athletic socks.

## II. Preliminary Injunction Standard

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the *status quo* and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir.2003). A plaintiff seeking a preliminary injunction must give notice to the opposing party under Federal Rule of Civil Procedure 65 and, at the hearing, must establish the following: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities/hardships tips in plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008); Moore v. Kempthorne, 465 F.Supp.2d 519, 525 (E.D.Va.2006) ("[t]he standard for granting either a TRO or a preliminary injunction is the same").

The most recent Rule 65 test was adopted by the Court of Appeals for the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir.2009), *vacated on other grounds*, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010)(memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir.2010), *overruling* Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir.1977) (providing a four-pronged balance of the hardships test). The Winter Court emphasized that a plaintiff must demonstrate more than

just a "possibility" of irreparable harm and make a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375.

### III. Discussion

#### A. Likelihood of Success on the Merits

Based on the briefs and presentations at the hearing, the court finds that plaintiff is not likely to prevail on the merits of its claim. To prevail on its unregistered trade dress claim, plaintiff must be able to prove three elements: "(1) the alleged trade dress is primarily non-functional; (2) its alleged trade dress is inherently distinctive or has acquired a secondary meaning; and (3) the alleged infringement creates a likelihood of confusion." Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 657 (4th Cir.1996).

Despite the court's initial concerns, which were based in great part on the coloration of the band -- an element claimed in the Complaint -- plaintiff has apparently abandoned its "blue band" claim in its arguments on the instant motion.  While plaintiff properly cites the court to J. Thomas McCarthy, *McCarthy On Trademarks And Unfair Competition* § 8:1, at 8-3 (2009), for the proposition that a trade dress claimant is free to define the set of packaging elements for which it claims protection, the court does not agree that plaintiff can, after making such election in the Complaint, pick and choose from those elements in formulating its request for preliminary injunction.  The reason is simple: the likelihood of success of the merits test asks whether plaintiff is likely to prevail on the claim it has asserted in its Complaint, not a subset of that claim as expressed in the request for injunctive relief.

#### 1. Burden of Showing that Trade Dress is Non-Functional

In any event, what was made plain to this court at the hearing is that plaintiff will be unlikely able to show that its claimed trade dress is primarily non-functional. "[T]rade dress protection may not be claimed for product features that are functional." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 29 (2001). Put another way, the Lanham Act does not afford protection to functional aspects of product packaging or to commonplace design elements. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 775 (1992). Where it is common practice in a particular industry or segment of that industry to package like goods in a similar style, trade dress which simply follows or mimics that style is unlikely to be infringing and more likely to be generic, making such packaging "functional." Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,
65 F.3d 1063, 1069-70 (2d Cir. 1995).

Even if the court were to include the "blue band" in its consideration, defendant has demonstrate that the use of a blue band in the packaging of men's athletic socks is nothing in which plaintiff can claim any proprietary interest. Indeed, defendant provided the court will multiple examples of other men's athletic sock purveyor's use of varying shades of blue in their bands. Indeed, "color…can *never* be inherently distinctive, although they can be protected upon a showing of secondary meaning." Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 206 (2000) (emphasis in the original). Here, plaintiff's own display at the hearing clearly indicated that there is no association between GOLDTOE socks and the color blue as it used a wide range of colors in the packaging of its products. Further, as it appears that plaintiff is seeking trade dress protection for an entire product line, plaintiff's in-court demonstration raises concerns that plaintiff will be unable to show that its claimed trade dress signifies an overall look which is

"consistent" throughout the line. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115 (2d Cir. 2001). Across its entire line of socks, plaintiff clearly uses an assortment of labels that utilize a spectrum of colors and design features, with some identical socks being displayed in different color packages based on store preferences. Within the men's athletic socks which are primarily at issue here, defendant demonstrated to the court that plaintiff fails to consistently use the very elements it now claims are at issue in this action.

As to the use of the word GOLD, its use is likely functional as an attempt to identify its product as being of high quality. While plaintiff certainly has protection for its famous GOLDTOE mark, it has no trademark protection for only the word "gold" as this term is frequently used in a functional sense to identify the product as expensive, high quality or luxurious. Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc., 149 F.3d 722, 728 (7th Cir. 1998) ("platinum" is a "self-laudatory term" which "describes the quality of plaintiff's…services").

As to the claimed rectangle in the upper right corner of the package, such element is also likely to be found to be functional as defendant has presented evidence that such device is commonly used to inform consumers how many pair of socks are in the package. Plaintiff admits as much in its Complaint (#1), at 19.

As to the gold side panels, defendant has presented a number of exhibits showing that the use of side panels on sock packages is commonplace in the industry. In addition, defendant has shown a number of examples where plaintiff did not use side panels and cases where the side panels used are not even gold, but red.

In sum, the court finds it is unlikely that plaintiff will be able to show that its claimed dress is non-functional.

### 2. Distinctiveness

Plaintiff's next burden is to show that its alleged trade dress is inherently distinctive or has acquired a secondary meaning. Trade dress packaging is protectable if it is inherently distinctive or if it has acquired distinctiveness, "secondary meaning."

> [T]he relevant inquiry is not whether the individual components of a design are common or not, but rather whether the alleged trade dress as a whole is inherently distinctive.

Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd., 187 F.3d 363, 373 (4th Cir. 1999).

Review of the evidence and arguments reveals that it is unlikely that plaintiff will be able to show that the claimed trade dress is inherently distinctive or has acquired secondary meaning. As is apparently the case in the sock market, "[w]here it is the custom of an industry to package products in a particular manner, a trade dress in that style would be generic and therefore not inherently distinctive." Paddington Corp. v. Attiki Imps. & Distrib., Inc., 996 F.2d 577, 583 (2d Cir. 1993).

While there is a presumption of distinctiveness that applies to the mark GOLDTOE, there is no presumption of distinctive that applies to the word GOLD as that is simply an individual word within a greater word mark. Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC, 2009 WL 959775, at *9 (S.D.N.Y. 2009). As courts have long observed, "dissecting marks often leads to error. Words which would not individually become a trademark may become one when taken together." Union Carbide Corp. v. Ever–Ready, Inc., 531 F.2d 366, 379 (7th Cir. 1976). Such conclusion is buttressed by evidence that defendant's use of the

brand GOLD LABEL is not just on socks, but on other items of apparel throughout its department stores. Clearly, defendant is attempting to imply that its full line of private-label goods are of superior quality, not that they are GOLDTOE products. "The linchpin of both common law and federal statutory trademark infringement claims is whether consumers in the relevant market confuse the alleged infringer's mark with the complainant's mark." Z-Man Fishing Products, Inc. v. Renosky, 790 F.Supp. 2d 418, 431 (D.S.C. 2011) (citation omitted).

Plaintiff's trade dress -- which varies precipitously across its full domestic product line -- does not likely serve as a source identifier for consumers. Instead, plaintiff attempts to show a presumption of secondary meaning through alleging that defendant copied its packaging. Plaintiff argues that its trade dress is "descriptive" and that it has, per se, garnered secondary meaning by defendant allegedly copying its work, making plaintiff's trade dress distinctive. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1264 (9th Cir.2001). However, the Court of Appeals for the Fourth Circuit has held that the

> presumption [of secondary meaning] arises only where the intentional copying is motivated by an intent to exploit the good will created by an already registered trademark[.] [A] court should require one who tries to deceive customers to prove that they have not been deceived. … In contrast, where the owner of the junior mark essentially copies a mark with no intent to exploit the senior mark's goodwill—such as to describe a functional aspect of the product—the party claiming infringement must prove the likelihood of confusion without the benefit of a presumption. [A] likelihood of confusion should not be inferred from proof that the actor intentionally copied the other's designation if the actor acted in good faith under circumstances that do not otherwise indicate an intent to cause confusion or to deceive.

Shakespeare Co. v. Silstar Corp. of Am., 110 F.3d 234, 241 (4th Cir. 1997) (internal citations omitted). While plaintiff has some evidence of possible copying, such evidence would not give rise to an inference as plaintiff has not come forward with evidence that defendant acted in bad

faith under circumstances indicating an intent to deceive or confuse. Indeed, defendant put on evidence at the hearing that it is routine for graphic artists to reference competitor's work in the clothing industry.

### 3. Likelihood of Confusion

Plaintiff also has the burden of showing that the alleged infringement creates a likelihood of confusion. In considering confusion, courts consider (1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity of the two parties' marks, (3) the similarity of the goods and services the marks identify, (4) the similarity of the facilities the two parties use in their businesses, (5) the similarity of advertising used by the two parties, (6) the defendant's intent, and (7) actual confusion. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir.1984). While plaintiff argues that the court should ignore the product and concentrate on the packaging, such is simply not possible when considering the possibility of confusion.

It is not a far stretch to conclude that both plaintiff and defendant each designed packaging to display the quality of the socks. The most striking aspect of plaintiff's men's athletic sock is not the package, but the gold toe which protrudes from the top, making those socks easily identifiable as GOLDTOE products. On the other hand, defendant's package also does nothing to hide the fact that its toe is plain and appears intended to draw the consumer's attention to the thickness of its sport sock. Further, while it is undisputed that GOLDTOE is a strong mark, the evidence presented at the hearing indicated that plaintiff's trade dress was weak as "[i]ts main features are used by a not inconsiderable number of other companies for other products." P.F. Cosmetique, S.A. v. Minnetonka Inc., 605 F. Supp. 662, 668 (S.D.N.Y. 1985). Even when the court limits it review to just the packaging itself and further limits that review to

the elements plaintiff now claims in its motion as opposed to its Complaint, it is apparent that plaintiff's and defendant's packaging had similar generic or functional design elements. Further, as it appears that plaintiff is seeking trade dress protection for an entire product line, plaintiff's *own* in-court demonstration raises concerns that plaintiff will be unable to show that its claimed trade dress signifies an overall look which is "consistent" throughout the line. <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 115 (2d Cir. 2001). Across its entire line of socks, plaintiff clearly uses an assortment of sized and shaped labels that utilize a spectrum of colors and design features, with some identical socks being displayed in different color packages based on store preferences. As to the men's athletic socks at issue here, defendant demonstrated to the court that plaintiff fails to consistently use on those products the very elements it now claims are protected under the Lanham Act. Further, there is no evidence that defendant has ever represented to its customers that its private label socks were GOLDTOE. While plaintiff has presented a photograph of GOLDTOE socks stocked on a GOLD LABEL rack, which may indicate *employee* confusion, plaintiff has presented no evidence of actual *consumer* confusion. As to the quality of the product, plaintiff has presented no evidence that the socks being sold by defendant as a house brand are inferior to the socks being sold by defendant. The court has also considered the marketplace, and it appears undisputed that defendant sells many items other than socks under its GOLD LABEL brand and that it displays those socks in dedicated GOLD LABEL displays, not mixed in with GOLDTOE socks.

\*\*\*

After considering the arguments and exhibits, the court finds that it is unlikely that plaintiff will prevail at trial on the merits. This factor weighs heavily against issuance of a preliminary injunction.

**B.     Irreparable Harm**

Based on the memoranda and exhibits presented, the court determines that if the alleged infringing activity were allowed to continue, it is unlikely that plaintiff will suffer irreparable harm in the absence of preliminary injunctive relief. Indeed, even if the court were to assume that some harm could occur, such as loss of market share, those damages could easily be remedied through payment of money damages, making them repairable. As to any potential reputational harm, the court cannot find that such is likely in these circumstances. As discussed above, there is no evidence and the court cannot discern from handling the socks that defendant's brand is anything less than a high quality, comparable product. There is simply no evidence that anyone has mistakenly purchased defendant's socks believing them to be GOLD TOE socks. The court finds that this factor weighs against granting preliminary injunctive relief.

**C.     Balance of the Equities/Hardships**

The court has considered the balance of the hardships. Defendant has shown that if a preliminary injunction were to issue, it would likely lose nearly $1,000,000 during the course of this litigation. Shields Decl., Def. Ex. 1, at ¶ 34. While a preliminary injunction would certainly provide early trade dress protection for plaintiff in the event that a jury finds in its favor, the lack of such protection is likely monetarily quantifiable and could be assessed as actual damages

In addition to quantifiable damages, the court has also considered the potential for damage to plaintiff's reputation and brand. While damages can be presumed where there is infringement, it appears unlikely that a jury will here find infringement, at least on the evidence this court saw at the hearing. Balancing the hardships and the equities, the court finds that this factor weighs against granting preliminary injunctive relief.

D.  **Public Interest**

Finally, the court has considered the public interest. Clearly, the public is interested in being able to rely on packaging to direct them to genuine goods. GOLDTOE is a famous brand that carries tremendous good will, a reputation for quality, and brand loyalty. The public also has an interest in having a competitive market place, where it can purchase products which it may perceive as being of better quality or better value. Courts have long recognized that dominant players in the market cannot suppress such competition simply by pointing to similarities in packaging:

> With the rise of regional and national discount retailers with established names and logos, retailers who market both national brands and their own private label brands in direct competition, this form of competition has become commonplace and well-known in the marketplace. When such packaging is clearly labelled [sic] and differentiated ... we are unwilling to attribute ... absent clear precedent so requiring, a rule that would make such competition presumptively unlawful.

Conopco, Inc. v. May Dep't Stores Co., 46 F.3d 1556, 1565 (Fed. Cir. 1994). Indeed, "the Lanham Act must be construed in the light of a strong federal policy in favor of vigorously competitive markets." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 382 (2d Cir. 1997).

With those concerns in mind, the centerpiece of this discreet inquiry is whether the public would be deceived if the court were to allow defendant's packaging to remain on its shelves

during the pendency of this litigation. N.Y. City Triathalon, LLC v. NYC Triathalon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). As discussed above, the court finds it unlikely that customers *shopping at defendant's stores* will be deceived into thinking that GOLD LABEL socks are GOLDTOE socks as defendant uses its GOLD LABEL brand throughout its store. In addition, defendant's packaging further identifies the socks as a house brand by including its other proprietary mark ROUNDTREE & YORKE. Considered in context, the public interest would likely be disserved by granting an injunction as it appears that such would only serve to diminish competition in the absence of any actual confusion. Put another way, the relief plaintiff seeks at this juncture would be like putting water on a house that was not on fire.

### IV. Conclusion

Having carefully considered all four factors, the court finds that the entry of a preliminary injunction is not called for in this particular matter.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Preliminary Injunction (#16) is **DENIED**.

Signed: March 20, 2015

-13-

Max O. Cogburn Jr
United States District Judge